BAKER MOTOR VEHICLE CO. et al. v. HUNTER.

(Circuit Court of Appeals, Second Circuit. December 12, 1916.)

No. 40.

BANKRUPTCY ☞266—SALE BY RECEIVER—BOND OF PURCHASER.

R., a corporation, without consent of its creditor H., transferred its property to N., a corporation, in consideration only of N.'s agreement to pay R.'s debts, all the other creditors of R. assenting to the transfer, and taking notes of N. in payment of their claims against R. Pending action by H. against R. on his claim, bankruptcy proceedings were instituted

against N. and the court allowed N.'s receiver to sell its assets to O., a corporation (of which R. and N. were subordinate companies, organized and controlled by it), on O. giving bond conditioned that it pay, or cause to be paid, to H. such sum as he may be entitled in law to receive, out of the amount received by the receiver for distribution to creditors of N., on the claim set up in the action against R. *Held*, that the bond required payment of the whole amount of H.'s judgment against R., and not a part thereof in the proportion of the purchase price of the assets to all the claims against N.; the amount of claims, including that of H., entitled to preferential payment out of N.'s assets, in view of the agreement of R.'s other creditors with N., and the relation of O., the chief creditor, to R. and N., being less than the sale price.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ☜266.]

Hough, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern District of New York.

Action by Louis R. Hunter against the Baker Motor Vehicle Company and another. Judgment for plaintiff (225 Fed. 1006), and defendants bring error. Affirmed.

This cause comes here on writ of error to the District Court for the Northern District of New York.

The plaintiffs in error will be referred to as defendants, and the defendant in error will be referred to as plaintiff.

The plaintiff has obtained a judgment in his favor for $10,790.57. The case was tried without a jury.

The action was commenced in a court of the state of New York, and was removed upon petition of the defendants into the District Court of the United States in and for the Northern District of New York.

The Baker Motor Vehicle Company is a corporation organized under the laws of the state of Ohio, and it is hereinafter called the Ohio Company. It is engaged in the business of manufacturing and selling electric motor vehicles.

The C. B. Rice Company is a corporation organized under the laws of the state of New York in December, 1906. It is hereinafter called the Rice Company. The Ohio Company caused it to be incorporated, and owned and controlled its stock, and managed, controlled, and directed its business and corporate affairs. It organized it for the purpose of conducting the business of the Ohio Company in New York in selling its automobiles and automobile parts, tools, and appliances. The amount of capital stock authorized was $75,000. The incorporators were Clarence B. Rice, Fred R. White, Robert C. Norton, Manfred L. Goss, and Nathaniel Platt.

Prior to the organization of the Rice Company the Ohio Company had maintained an agency in New York City to look after its business in that part of the country. It sent Rice, who had been in its employ as a salesman, to manage the New York business, and paid him a salary of $100 a month and 25 per cent. of the profits. Rice became the president of the Rice Company. White was the general manager and vice president of the Ohio Company, Goss was the secretary of that company, and Norton was its treasurer. Rice testified that the meeting to organize the Rice Company was held in the offices of the Ohio Company at Cleveland, or in those of its attorneys in the same city.

The New York agency maintained by the Ohio Company prior to the incorporation of the Rice Company became indebted to the Ohio Company to the extent of $85,000. So much of the stock of the Rice Company as was issued was issued to the Ohio Company. And Rice, as president of the Rice Company, submitted reports of the condition of the business regularly to the Ohio Company. Asked how often these reports were made, he answered that he did not remember, "It might have been weekly, and it was at least once a month."

In January, 1907, the Ohio Company made a written agreement with C. B. Rice to sell him all the stock of the Rice Company for $15,000 in cash and for

$50,000 in notes, retaining the stock as collateral to the notes, as well as the right to vote the stock, and as additional security the resignation of Mrs. Rice and her brother from the board of directors. The Ohio Company gave the Rice Company an agency agreement for the exclusive sale of its goods in New York, New Jersey, and in a part of Connecticut. The Ohio Company, however, reserved to itself the right to cancel the agency agreement when the management of the business was not satisfactory to it. It was also agreed that the Ohio Company should be permitted to retain 51 per cent. of the Rice Company stock so long as any of the notes remained unpaid. The notes were demand notes given for the stock, and were signed by Rice and his wife.

The Rice Company continued in business some six or seven months only. Then the Ohio Company, asserting that matters were not satisfactory to it, exercised its right to cancel the agency contract, and thus put the Rice Company in a position where it could not get electric cars or parts to sell, and under the agency agreement it could sell no other cars than those made by the Ohio Company. The latter company thereupon caused a circular to be issued to the creditors, stating that the Rice Company had lost the agency agreement and had become insolvent, and asked the creditors to agree to turn all its assets over to a new company to be formed, and which should assume all of its liabilities. It got all of the creditors with the exception of the plaintiff to assent to this arrangement.

Rice testified that just prior to this, and in July, 1907, he had a conference with the officers of the Ohio Company when he was informed that if he would retire from the Rice Company, they would form a new company to take over the assets and pay the creditors. He said there were several conversations on the subject, and a demand was made upon him that it must be done or the contract would be canceled, and that he agreed to it.

The Ohio Corporation then organized in August, 1907, the Baker Motor Vehicle Company of New York, hereinafter called the New York Company. The new company had a nominal capital stock of $20,000 with only $10,000 issued and only $500 paid in. The Rice Company, acting under the control of the Ohio Company, voted to transfer all its property to the New York Company for the sole consideration of the latter's agreement to pay the debts, and did so transfer them in August, 1907. The New York Company entered on its books the assets thus taken over as $116,657.07, and the liabilities which were assumed as $79,831.98. The New York Company also possessed the agency agreement which the Ohio Company gave to the president of the New York Company, and which he transferred to the latter to pay for all its stock that was issued, which was, as heretofore stated, $10,000.

The certificate of incorporation of the New York Company provided that the directors need not be stockholders. The number of directors was fixed at five. Fred R. White, the general manager and vice president of the Ohio Company, was one of the five. George H. Kelley of Cleveland was another. The testimony shows that he was the attorney of the Ohio Company, and was, at the time his testimony was given, the general manager of the truck department of the Ohio Company, having been appointed to that position in October, 1909. He drew the papers incorporating the Rice Company, and prior to the transfer of the assets of the Rice Company to the New York corporation he had been sent to New York by the Ohio Company with full authority to handle the matters relating to the two companies absolutely as he pleased. He spent six weeks in New York in adjusting the business. Another of the trustees was Nathaniel Platt, who had served as treasurer of the Rice Company. The other two trustees were lawyers in New York City who represented creditors of the Rice Company; James J. Allen, who does not seem to have held any stock, and James D. Lang, Jr., who held one share.

In October, 1908, one year after the assets of the Rice Company had been transferred to it, proceedings in bankruptcy were instituted against the New York Company. Prior to the institution of the proceedings Hunter had commenced an action in the New York court against the Rice Company on the paper which he held against it, and the action was on the day calendar and was about to be reached. The receiver in bankruptcy asked for an injunction staying all proceedings in Hunter's action, and it was stated in the mov-

ing papers that the transactions between the Rice Company and the New York Company (the alleged bankrupt) were such that the latter "is or may be ultimately liable in case a judgment is obtained against said C. B. Rice Company in said suit." The injunction was obtained on the ground that the receiver wished to examine into the action. Before steps could be taken to dissolve the injunction the term came to an end, and the court was adjourned to the following January.

An order was later obtained, authorizing the receiver of the New York Company to sell its assets in bulk, which he promptly did to the Ohio Company for $18,000, although a short time before, two months after the receiver had been appointed, the receiver's attorney had informed the plaintiff, who was considering buying the business, that no offer of less than $40,000 for the assets would be considered. It will be recalled that one year before the New York Company had acquired the assets of the Rice Company at a valuation of $116,657.07, subject to liabilities of $79,831.98. This sale of the assets to the Ohio Company was conditioned on the latter company's giving a surety company bond to the plaintiff herein in the sum of $15,000, which bond was to be conditioned that the Ohio Company should pay the plaintiff such sums as he might be found entitled to in his action then pending in the Supreme Court of New York against the Rice Company.

On February 4, 1909, the plaintiff obtained a judgment of $8,329.75 against the Rice Company in the above-mentioned action. An execution was taken out and returned unsatisfied, and this action was commenced on the bond.

Willard P. Jessup, of New York City (Clifton P. Williamson, of New York City, of counsel), for plaintiffs in error.

Elisha B. Powell, of Oswego, N. Y. (Robert B. Knowles, of New York City, of counsel), for defendant in error.

Before COXE, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). This is an action at common law to recover on a bond given on November 25, 1908, by the Ohio Company as principal and the American Bonding Company of Baltimore as surety. The bond recites that Hunter claims to be a creditor of the New York Company in the sum of $7,-500, that the company is in bankruptcy, and then continues as follows:

"That if the Baker Motor Vel..cle Company (of Ohio) shall pay or cause to be paid to the said Louis R. Hunter such sum or sums as he, the said Louis R. Hunter may be entitled in law to receive, out of the amount received by James N. Rosenberg, receiver in bankruptcy of the Baker Motor Vehicle Company of New York for distribution to creditors of said Baker Motor Vehicle Company of New York, upon the said Louis R. Hunter's claim as it is set up in a certain suit now pending in the Supreme Court of the state of New York, county of Oswego, wherein the said Louis R. Hunter is plaintiff and Clarence B. Rice and the C. D. Rice Company are defendants, then this obligation to be null and void, otherwise to remain in full force and effect."

It appears in the record that after the plaintiff obtained his judgment in the New York court the attorney for the defendants the Ohio Company offered to tender to the plaintiff and his attorney the sum of $1,299.44. In making this offer it was stated that the assets of the New York Company had been sold for $18,000, and that the plaintiff's proportion of that sum was such an amount as his claims for $8,329.15 bore to the whole amount of claims against the company. The proposed tender was refused on the ground that under the bond plaintiff was entitled to recover the amount of his judgment in full. The court below has allowed him the full amount, and wheth-

238 F.—57

er he is entitled to the full amount or only to a proportionate amount is the real question which this court has to determine. There are, however, 14 assignments of error. There were 62 propositions of fact found by the trial court, and the defendants contend that 41 of these are without evidence to support them. In a number of instances the findings are not relevant to the issues involved. But it is not necessary to review the findings in detail. Upon the essential facts we think the evidence is sufficient to support them.

The plaintiff sued in the state court upon a note made by C. B. Rice. The note was dated June 22, 1907, and was a promise to pay to the Rice Company or its order, three months from date, $9,500, with interest. It purported to be for value received, and was indorsed by the Rice Company and delivered to the plaintiff, who indorsed it, as he claimed, for the accommodation of the Rice Company. The note was then delivered to Rice, and was for value transferred to the First National Bank of Oswego, N. Y. The note was not paid when due, except that $2,000 was paid thereon, and the plaintiff as indorser paid the balance of it. The judgment against the Rice Company clearly establishes the fact that the plaintiff was a creditor of the Rice Company at the time that that company turned over its assets to the New York Company.

When the Rice Company transferred all its assets to the New York Company without any consideration other than that the latter would pay the liabilities of the former, the New York Company took the assets subject to the plaintiff's claim and quite irrespective of its express promise to pay the liabilities of the transferrer company. And as the assets received were greater than the liabilities, it was bound to pay the claim in full, irrespective of its promise. Such a transfer of the assets was a fraud upon the rights of any creditor who did not assent to it, and the plaintiff herein at no time assented to it. The transfer as against the plaintiff could not be sustained, either at law or in equity. The famous statute 13 Eliz. c. 5, declaring transfers made to hinder, delay, or defraud creditors utterly void, was, as Chancellor Kent declared in Sands v. Codwise, 4 Johns. 536, 596 (4 Am. Dec. 305), "only in affirmance of the principles of the common law." It is elementary that a corporation cannot give away its assets to the prejudice of its creditors, nor can it, as against its creditors who have not assented to it, transfer all of its assets to another corporation which guarantees the payment of the debts of the former. The express agreement to pay the debts does not constitute a novation, and the corporation, taking the property, holds it subject to a lien in favor of the creditors of the transferrer. Blair v. St. Louis, etc., R. Co. (C. C.) 24 Fed. 148; Fogg v. St. Louis, etc., R. Co. (C. C.) 17 Fed. 871, 5 McCrary, 441; Brum v. Merchants' Mutual Insurance Co. (C. C.) 16 Fed. 140, 4 Woods, 156; Heman v. Britton, 88 Mo. 549; Jefferson National Bank v. Texas Investment Co., 74 Tex. 421, 12 S. W. 101. And if the transferee corporation has agreed to assume the debts, under the principles of equity and under modern Codes of Procedure, the creditors of the transferring corporation may maintain a direct action against the transferee corporation upon the

contract. 10 Cyc. 1268. There can be no question but that the plaintiff had a valid claim which he could enforce against the assets of the Rice Company while in its possession, and against the New York Company when they were transferred to the latter.

The assets of the Rice Company at the time of their transfer to the New York Company were in excess of $100,000. All the creditors of the Rice Company assented to the transfer except the plaintiff, and took the notes of the New York Company payable in one year in payment of their claims against the Rice Company. The result of that agreement was that the New York Company took the assets of the Rice Company free from any lien arising from the claims of the Rice Company's creditors with the exception of that of the plaintiff's. As to his claim the assets continued subject to his equitable lien, and constituted a trust fund for its payment. And at the time the assets of the New York Company were turned over to the Ohio Company, the claims of the creditors of the New York Company itself amounted to about $4,000 in addition. So that all the claims to be paid out of the $18,000 of assets which the Ohio Company received amounted to about $12,000. While it is not material, the trial judge expressed the opinion that the assets which were sold to the Ohio Company for $18,000 were worth $40,000. In ascertaining the amount of claims these assets in the hands of the Ohio Company were subject to, claims due to the Ohio Company from the New York Company have not been included. The court below held that the claims of that company were only entitled to be paid out of what remained after the other claims were paid. That conclusion was reached upon the theory that the legal fiction of distinct corporate existence should be disregarded in a case where a corporation is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality or adjunct of another corporation. The trial court had no doubt, and this court has none, that the New York Company was nothing more than an instrumentality or adjunct of the Ohio Company which acted through it. In such cases the controlling corporation may be held liable for the debts of the subordinate company. This court called attention to this principle in Re Watertown Paper Co., 169 Fed. 252, 94 C. C. A. 528 (1909). In such cases debts due from the subordinate company to the controlling corporation, and which that corporation would accordingly be liable for, are not entitled to be paid pari passu with the other debts; but the latter are entitled to be first paid in full.

When it suited the purposes of the Ohio Corporation, having wound up the Rice Company to adopt the same course as respects the New York Corporation, the Bankruptcy Court consented that the assets should be transferred to the Ohio Company, but only upon condition that that company should give the bond already referred to, and upon which this action was brought, and by which it became bound to pay to the plaintiff such sum as he might be entitled in law to receive. The bond was substituted for the assets to be transferred, and out of those assets this plaintiff was entitled to be paid in full. It is plain in the light of what has been said in this opinion that the plaintiff's claim upon the assets turned over to the Ohio Company was one

which he was entitled to have paid him in full. And it is not to be supposed that it was the intention of the court in substituting the bond for the assets to deprive the plaintiff of the full payment of his claim. The language of the bond is that the Ohio Company "shall pay or cause to be paid to the said Louis R. Hunter such sum or sums as he, the said Louis R. Hunter, may be entitled in law to receive," and so forth. The amount which he is entitled in law to receive is the amount of the judgment which he has obtained at law in the action in the New York court. If that is not what the bond means, Hunter would have been better off without the bond than with it.

While this is an action at law upon a bond, it is quite within the right of the court to consider what the plaintiff's right in these assets was either at law or in equity at the time the bond was given. As the intention was to substitute the bond for the assets, the purpose must have been to preserve whatever rights the plaintiff had in the assets without regard to whether his rights in them were legal or equitable.

In the argument in this court counsel insisted that the trust fund doctrine had no application to the facts of this case. They insist that that doctrine applies only to cases of insolvency, and they call our attention to our decision in Re Fechheimer Fishel Co., 212 Fed. 357, 129 C. C. A. 33 (1914), where we said:

"In saying that the assets of a corporation constitute a trust fund, we are to be understood as referring to the assets of an insolvent corporation. A solvent corporation, of course, holds its property as any individual holds his. But when a corporation becomes insolvent, a trust arises in respect to the administration of its assets for the benefit of its creditors."

The statement quoted is in accordance with the law as expounded in the federal courts. But the fact that the Rice Company was a solvent company when its assets were transferred does not make the doctrine quoted inapplicable to the facts of that transfer. In saying that a solvent corporation holds its property as any individual holds his, we assumed that every one knows that if an individual, A., transfers all his property to B. without consideration, B. holds the property as a constructive trustee for the creditors of A. whether A. is solvent or insolvent at the time of the transfer.

Judgment affirmed.

HOUGH, Circuit Judge (dissenting). The first question in this and every other litigation is not whether plaintiff can recover in any form of action, but whether recovery can be had in the particular suit brought.

This action at law is not on a debt; it bears no relation to the statute of Elizabeth or any similar enactment. It is not to set aside any transfer of property, nor to enforce an equitable or other lien; it is an ordinary suit against principal and surety on a bond, and presents no issue other than the inquiry whether the condition of that instrument has been broken.

The terms of the bond are set forth in the opinion of the court; whether they mean that the Baker Company of Ohio agreed to pay or secure Hunter's claim in full, or only such dividend thereon as he

might establish in bankruptcy, is not a matter susceptible of much argument, for the signification must be extracted from few and ill-chosen words. I regard it as self-evident that the bond can only be construed into a promise to pay in full by disregarding most of the words used.

Yet the generous obligation spelled out by the court below affects not only the Baker Company of Ohio as principal, but a surety whose liability is strictissimi juris; and, in this action on the bond, there can be no recovery beyond the measure of the surety's responsibility.

The basis of judgment below and affirmance here is a substitution of the bond for certain assets in and to which plaintiff had certain rights at the time of bond given. This, of course, presupposes an intent so to substitute, yet the record is barren of evidence of any intent on the part of the surety other than to sign a certain form of words; and in those words no such substitution or intent to substitute can be discovered.

Nor did the plaintiff by his own pleading present any such contention. The complaint only alleges that among the creditors of the Baker Company of New York (the bankrupt) the plaintiff stands alone with a "first and preferred claim" against the assets of that company, and so is entitled to be paid in full in the bankruptcy proceeding; not having received such payment, this suit is brought.

Thus the test of plaintiff's right to recover on the bond is pleaded as identical with or dependent upon his right to recover in full in bankruptcy. This pleading is in complete harmony with what I regard as the obvious meaning of the condition of the bond.

It follows that plaintiff was bound by his complaint, as well as by the terms of the instrument in suit, to make out a case which would have entitled him to a judgment against the trustee in bankruptcy of the Baker Company of New York. It has never been asserted in this record that such a demand was established, and if the fact is not admitted, it is obvious.

It advances nothing to dwell on the order made by the bankruptcy court, permitting the sale of assets. That order was no more than a formal registration of creditors' consents, filed in writing with said order, and Hunter's consent is in the exact language of the bond in suit. The wording of consent and bond is not good; it may not express the intent either of Hunter or the Baker Company of Ohio; but that is immaterial in an action where the propriety of the judgment must be gauged by the surety's rights and by nothing else.

Nor is it material to assert that the transfer of assets from the Rice Company to the Baker Company of New York was not good as against Hunter. Nobody has ever asserted such validity; indeed so far from denying liability, the Baker Company of New York openly assumed all the Rice Company's obligation, including that to Hunter if he succeeded in establishing it. Therefore no one sought to make Hunter worse off after transfer than before; but why his position should be bettered thereby has never been explained.

Assuming, however, the equitable lien now said to exist in favor

of Hunter and to be a reason for entering judgment against the surety on this bond, the lien must be on some particular property, and it was incumbent on plaintiff to show the property and its worth if it had been parted with. The only proof as to the worth of what Rice Company had and Baker Company of New York got is a trial balance sheet, showing solvency in the Rice Company (unexplained and duly objected to) of a date prior to an agreement signed by the plaintiff Hunter (as president of a creditor concern), to the effect that the Rice Company was insolvent. This seems unusually insufficient.

Nor is there any evidence that what, a year later, the Baker Company turned into bankruptcy to be there sold consisted of Rice Company's assets either in whole or in part. In short, nothing is shown to which the asserted lien can attach, or ever did attach.

This hiatus in the evidence has been supplied (so to speak) by confusing an action to enforce a lien with one to obtain an accounting from a transferee in fraud of creditors. This case was really tried below on the theory of fraud, and seems to be affirmed in approbation thereof. No such case was pleaded, and if it had been, and had been proved, it has not been pointed out why the American Bonding Company is affected thereby.

For these reasons I dissent from the reasoning and conclusion of the court.