**THE J. B. AUSTIN, Jr., and four other cases.**

(District Court, E. D. New York. February 11, 1924.)

**Maritime liens ☞29—Vessels held liable for coal furnished at request of corporation owning stock of owners and having same officers.**

Vessels *held* liable for coal furnished at request of corporation which owned all the capital stock of one owner and 85 per cent. of the capital stock of other owner, and which had same officers, in view of circumstances indicating that there was no real diversity of interest.

Libels by Burns Bros. against the steam tug J. B. Austin, Jr., her engines, etc., and against the Gov. Martin H. Glynn, in which the Shippers' Navigation Company filed claims as owner, and by the same libelant against the Tuscorara, the Red Jacket, and the H. G. Tisdale, in which the Lake Champlain Transportation Company filed claims as owner. Decree for libelant in each case.

Alexander & Ash, of New York City (Edward Ash, of New York City, of counsel), for libelant.

Park Mattison & Lynch, of New York City (Frank P. Treanor, Jr., of New York City, of counsel), for claimant.

GARVIN, District Judge. In each of these five actions libelant brought suit in admiralty in rem for coal furnished the J. B. Austin, Jr., the Gov. Martin H. Glynn, the Tuscorara, the Red Jacket, and the H. G. Tisdale. The Shippers' Navigation Company filed claims in the first two actions, as owner, and the Lake Champlain Transportation Company, in the last three, in a like capacity.

All the coal was furnished at the request of the Inland Marine Corporation, which owns all the capital stock of the Shippers' Navigation Company and 85 per cent. of the capital stock of the Lake Champlain Transportation Company. In addition, it appeared at the trial that there was good reason to believe, from the attitude of the claimants, that there were other circumstances, including identity of officers and offices, which indicate no real diversity of interest between Inland Marine Corporation and the other two companies.

In view of the authorities, as well as of all principles of equity, I find no difficulty in holding that libelant is entitled to a decree in each case. General observations in point are found in McCaskill Co. v. United States, 216 U. S. 504, 30 Sup. Ct. 386, 54 L. Ed. 590, United States v. Milwaukee Refrigerator Transit Co. (C. C.) 142 Fed. 247, In re Rieger, Kapner & Allmark (D. C.) 157 Fed. 609, and Baker Motor Vehicle Co.

v. Hunter, 238 Fed. 894, 152 C. C. A. 28. Practically controlling is the case of Luckenbach S. S. Co. v. W. R. Grace & Co. (C. C. A.) 267 Fed. 676, in which the Luckenbach Company was held liable for the default of the Luckenbach Steamship Company. The opinion said in part:

"Is the Luckenbach Company liable for the default of the Luckenbach Steamship Company? From the statements and admissions in their respective answers these facts appear: The Luckenbach Steamship Company has a capital of only $10,000. The Luckenbach Company, also a Delaware corporation, is capitalized at $800,000. They have the same directors and the same officers, and Edgar F. Luckenbach, who was president of and personally managed both companies, owns 94 per cent. of the stock of the Luckenbach Steamship Company, and almost 90 per cent. of the stock of the Luckenbach Company. The latter company owns all or most of the steamers referred to in the record, some eight or nine in number. By contracts of May 1, July 1, and October 1, 1915, copies of which are annexed to the libel, these steamers were leased to the steamship company for terms running into the year 1926, and upon terms which, though something more than nominal, are obviously far below their rental value.

"Putting aside any inquiry into the motive for this arrangement, we think it too plain for serious question that the facts here considered show such identity of the two corporations, or at least give rise to such a strong presumption of their identity, as warrants the conclusion that the Luckenbach Company is equally responsible with the steamship company for the breach by the latter of its contract with the appellee. For all practical purposes the two concerns are one, and it would be unconscionable to allow the owner of this fleet of steamers, worth millions of dollars, to escape liability because it had turned them over a year before to a $10,000 corporation, which is simply itself in another form. We have only to add that on this issue the case is covered by our recent decision in The Willem Van Driel, Sr., 252 Fed. 35, 39, 164 C. C. A. 147, 151, wherein it is said: 'The elevators were constructed and operated merely as a facility to the business of the railroad company. Applying the language of Judge Wallace in Lehigh Valley Railroad Co. v. Du Pont, 128 Fed. 840, 64 C. C. A. 478, the potential and ultimate control of all its property and business affairs of the elevator company was lodged in the railroad com-

pany, and this control was exercised as completely and as directly as the machinery of corporate organisms would permit. Such complete dominance and control by the railroad company made the elevator company its mere puppet. United States v. Del., Lack. & West. R. R., 238 U. S. 516, 35 Sup. Ct. 873, 59 L. Ed. 1438.'"

This case was quoted with approval in The Centaurus (C. C. A.) 291 Fed. 751. Other authorities to the same general effect are numerous.

Libelant may have a decree in each case.