**SOUTH CHESTER TUBE CO. et al. v.**
**NAISMITH et al.**
**No. 5444.**

Circuit Court of Appeals, Third Circuit.
Sept. 21, 1934.

W. Denning Stewart, of Pittsburgh, Pa., and H. Edgar Barnes and A. S. Ashbridge, Jr., both of Philadelphia, Pa., for appellants.

Louis J. Wiesen, of Sharon, Pa., for appellees.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from a decree of the District Court refusing to segregate the proceeds of a sale for the account of the appellants.

On January 9, 1933, McDowell & Co. owned assets found by the court to be worth more than $200,000 on December 23, 1932, and presumably of that value on January 9th. On that day, January 9th, McDowell & Co. sold and transferred these assets to the Mercer Tube & Manufacturing Company, hereinafter called the Mercer Company, in consideration of the assumption by it of the liabilities of McDowell & Co. which were admitted to be $34,018.46, but which have now been reduced to $14,617.40. The appellants were not informed of the transaction. Consequently they did not consent to it, nor did they agree to accept the Mercer Company as their debtor.

Upon a bill of complaint, filed April 7, 1933, by Republic Steel Corporation and Sharon Hoop Company, against the Mercer Company, the appellees were appointed receivers by the District Court for the Mercer Company, Sharon Steel Products Company, hereinafter called the Sharon Company, and McDowell & Co. The Mercer Company is a Delaware corporation and the Sharon and McDowell Companies are Pennsylvania corporations.

On October 5, 1933, appellees sold a quantity of pipe of about 436 tons, which was admittedly the property transferred to the Mercer Company by McDowell & Co., for $8,600. Thereupon the appellants filed a petition in the District Court asking that the $8,600 be segregated and set aside in a separate fund

for the benefit of themselves and other creditors of McDowell & Co. who might be entitled to it upon distribution, and that it be not used by the receivers in their general operation of the three companies.

The receivers opposed the petition and aver that McDowell and Company did not transfer all of its property to the Mercer Company and that the value of the portion which it retained "greatly exceeded the unpaid debts of McDowell and Company"; that while "the effect of said conveyance of real estate by McDowell and Company may have operated to produce the technical and constructive elements rendering the conveyance void under the Uniform Fraudulent Conveyance Act of Pennsylvania (39 PS §§ 351 and note, 352 et seq.) at the instance of creditors thereby aggrieved," yet the assets of McDowell & Co. as of December 29, 1932, "must be marshalled by its creditors to the result and effect that petitioners cannot resort to those assets transferred as aforesaid on December 29, 1932 (or January 9, 1933, both dates being alleged)  *  *  *  until they have pursued and exhausted all those assets thereafter possessed by McDowell and Company for its creditors' satisfaction."

The District Court refused to segregate the $8,600, and discharged the rule to show cause allowed when the petition was filed. An appeal was taken from this decree.

The question is whether or not the appellants are entitled to have the $8,600 segregated and set aside and not used by the receivers in the general operation of the three companies.

The property retained by McDowell & Co. might or might not, under the shifting value of property in these unusual times, have been sufficient to pay the indebtedness to the appellants and other creditors similarly situated. As we understand it, all the personal property of McDowell & Co. was transferred to the Mercer Company, but not the real estate which appellees allege is sufficient to satisfy its unpaid obligation.

■ It is admitted by the appellees that if all the assets, real and personal, of McDowell & Co. had been transferred to the Mercer Company, the transfer would have been invalid and in law a fraud upon the creditors who did not consent to the transfer or know of it. In such a situation the appellants in a proper procedure would be entitled to an order directing payment of their indebtedness, or, in default of payment, setting aside the transfer and directing the return of the property. A transfer by stockholders of all the assets of one corporation to another organized by them constitutes a fraud in law upon existing creditors of the old corporation regardless of an honest intent of the stockholders, and in such case the creditors may hold the new corporation liable to the extent of the assets received by it. The corporation receiving the assets, regardless of its promise to pay all indebtedness, holds them subject to a lien in favor of the creditors of the transferor. First National Bank of Cincinnati v. Flershem, 290 U. S. 504, 54 S. Ct. 298, 78 L. Ed. 465, 90 A. L. R. 391; Central Improvement Co. v. Cambria Steel Co. (C. C. A.) 201 F. 811, 822; Baker Motor Vehicle Co. v. Hunter (C. C. A.) 238 F. 894; Cobb v. Interstate Mortgage Corporation (C. C. A.) 20 F.(2d) 786, 789; Thompson on Corporations, Vol. 8, § 6248 (3d Ed.).

■ But the appellees say that the principles of law announced in these cases are not applicable to the facts in the instant case for the reason that prior to the transfer of the personal property to the Mercer Company, the stockholders of McDowell & Co., Sharon Company, both Pennsylvania corporations, and the Mercer County Realty Holding Company, a Delaware corporation, by an agreement in writing, undertook to merge these corporations and were to exchange their stock in the respective companies for stock in a Delaware corporation to be organized and known as the "Mercer Tube and Manufacturing Company"; that pursuant to this agreement, the corporation was created and McDowell & Co. transferred all its personal property to the new Mercer Company, but retained its real estate which was not to be conveyed to the new corporation; and that "inasmuch as McDowell and Company's creditors were thereby affected, they have a right to pursue such asset (retained real estate) and resort thereto must be had before appropriation of the transferred personal property in which the Mercer Tube and Manufacturing Company and its creditors have acquired rights and equities."

Just what rights and equities the creditors of the Mercer Company have acquired in and to the personal property transferred to it by McDowell & Co. is not disclosed. The creditors of McDowell & Co. have a lien on the personal property until it in the regular course of business passes into the hands of bona fide purchasers for value, but having passed into the hands of such purchasers, they are relegated to the proceeds of those sales and it is these which they are seeking to

have segregated. There would be no question about this right if all of the corporate property had been transferred to the Mercer Company. We see no reason why they should be required to proceed against this removed real estate and determine whether or not it is sufficient to pay the debts before it attempts to prevent the personal property, or the money received from the sale of it, from being dissipated and getting beyond their reach. If they had followed the course suggested by appellees and it had turned out that the real estate, provided it now may be reached, was insufficient to pay the indebtedness, then the proceeds which they are now seeking to have made safe and available for the payment of their debts might be beyond their reach. Nor do we know of any reason why they should under the circumstances of this case be required to proceed first against the real estate. Ordinarily in proceeding against insolvent decedent's estates, creditors are required to proceed first against the personal property, and we see no reason why in this case they may not take steps first to prevent the proceeds of the sale of the personal property from getting beyond their reach.

The principles of law announced in the above cases are applicable to the facts in this case, and the decree of the District Court is reversed, with directions to segregate the $8,-600 for the benefit of the creditors pending payment of their indebtedness.