## Godina *v.* Oswald et al., Appellants.

52

Argued April 15, 1965.   Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Charles F. Dean*, for appellants.

*Gary F. Sharlock*, with him *Mercer & Buckley*, for appellee.

OPINION BY WATKINS, J., June 17, 1965:

This is an appeal from the judgment of the Court of Common Pleas of Allegheny County entered on a verdict of a jury in an attachment execution action, in the amount of $4,987.85 in favor of the judgment creditor Joseph Godina, administrator of the estate of Josephine Godina, deceased, the appellee, and against Robert J. Oswald and Prosper W. Oswald, the garnishees-appellants; and from the refusal of motions for judgment n.o.v. and for a new trial.

The judgment upon which this attachment issued was obtained against John K. Oswald the defendant judgment debtor in Mercer County as the result of a wrongful death action.   The verdict entered against him amounted to $30,000.   The defendant's insurer paid the appellee $10,000, his total coverage, and the remaining $20,000 was reduced to judgment.

The record shows that at the time of the accident on July 28, 1957 and at the time of the trial in Mercer County the defendant was a member of a partnership with his two brothers, the garnishees in this action, in a meat market. The record also shows that this partnership interest was the only property of the defendant in severalty at that time and since that time.

Immediately before and during the trial of the civil action the defendant executed a series of documents purporting to transfer his interest in the partnership and the real estate which housed it to Prosper and Robert, for a stated consideration of $4,987.85. The trial commenced on May 5, 1958. The next day a deed was recorded which purportedly conveyed John's interest to his brothers. The verdict was received on May 8, 1958. The certificate withdrawing John's name from the fictitious name registration was not filed until June 19, 1958. The partnership dissolution was dated April 30, 1958, but Prosper testified he did not remember when it was executed.

The consideration was $4,987.85 and although it is apparent from this record that a very careful conveyancing job was performed, no records were introduced to support the payment of the consideration. If it were in fact paid it would be a fair consideration. John testified that he received various checks and cash from his brothers over several weeks and spent the entire amount in the same period. No receipts or bank deposits record the event. John was unable to account for his expenditures. Prosper and Robert each testified that $4,000 was paid in cash on one occasion. He demanded cash, received cash and gave no receipt. There was no change in the relationship of the partners after the transfer. Prosper testified: "Everything is the same". John continued in the business at the same rate of compensation as he earned prior to the trial.

From this record the jury could well infer that the garnishees and the defendant were aware that a judgment against John would probably be forthcoming in a matter of days; that his insurance coverage might be inadequate to cover the verdict; that John's assets, with the assistance of the garnishees, were converted into cash, which easily could be concealed; that there were no records of the receiving of the monies and no explanation as to what happened to the cash; that after the conveyance the business was conducted as usual, John's position did not change; and that the relationship of the brothers under all the facts of this transaction suggest a very suspicious circumstance. From these facts the jury could and did find that the conveyance was made with the actual intent to hinder, delay or defraud the creditor.

The action in this case comes squarely within the provisions of §7 of the Uniform Fraudulent Conveyance Act of May 21, 1921, P. L. 1045, 39 PS §357, which provides: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

Statutes need not be specifically pleaded but there must be set forth sufficient facts to bring the case within the statute in question. *Goldberg v. Friedrich,* 279 Pa. 572, 124 A. 186 (1924). The niceties of procedure and pleading make fine intelligence games for lawyers but should never be used to deny ultimate justice. This is the reason for our modern approach to rules of civil procedure. In *Sheffit v. Koff,* 175 Pa. Superior Ct. 37, 100 A. 2d 393 (1953), this Court said at page 41: "Since fraud is usually denied, it must be inferred from all facts and circumstances surrounding the conveyance, including subsequent conduct." And in reviewing section 7 of the Act we said, at page 41: "Section 7

of the Act does not require that the debtor make himself insolvent or absolutely execution proof, but only that he convey with the intent to hinder, delay, or defraud his creditors. That does not necessarily require insolvency or lack of a fair consideration. See South Chester Tube Co. v. Naismith, 73 F. 2d 13 and Shapiro v. Wilgus, 287 U.S. 348. It is true that many cases involve a conveyance without consideration or an insolvency, but those factors are considered as showing actual intent to defraud. The whole effect of this transaction was clearly to remove from plaintiff's grasp the likeliest asset to cover the debt, leaving only intangible and hard to discover assets of a most questionable value at sheriff's sale. To say that this resulted in hindering and delaying the recovery of a just debt is an understatement. The necessary intent is reasonably inferred from all the tangled skein of defendants' manipulations."

The court carefully charged as to the difference between actual intent as distinguished from intent presumed in law to hinder, delay or defraud either present or future creditors. He charged: "An intent presumed by law would be such as where a husband might convey property to his wife for a nominal rather than a full and fair consideration. The law in such a case presumes a fraudulent intent. That is not involved in this case. There is no presumption of law against this transfer. You are to find out as best you can, from the evidence which the parties are able to produce and have produced to you and under the rules of law as the Court has given them to you, what was the intent of John K. Oswald when he transferred his interest in this partnership over to his brothers." It should be pointed out however that the relationship of the parties is a circumstance to be taken into consideration with the rest of the evidence in this record to determine what the actual intent was, not only of the seller

but also of the buyers. The jury might well infer from this record that the seller intended to put his assets in the meat market beyond the reach of this creditor and that his brothers conspired and cooperated with him to accomplish this.

The issue in this case is whether the transfer by John Oswald of his interest in the partnership composed of the three brothers was a fair transaction or was it fraudulent as to present and future creditors. The garnishees contend that if the consideration was fair and there was no evidence on their part of an intent to defraud, the intention of the defendant is immaterial. They complain of the court's refusal to charge: "If you find that Prosper W. Oswald and Robert J. Oswald purchased the partnership interest from John K. Oswald in good faith and paid a fair consideration, your verdict must be for the garnishees." The Court refused to so charge, holding that such a charge would be an improper statement of the law in that it ignores the intent of the defendant debtor.

We agree with the court below. Section 9 of the Uniform Fraudulent Conveyance Act, supra, 39 PS §359, provides:

"Where a conveyance or obligation is fraudulent as to a creditor, such creditor, . . . may, as against any person *except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase,* . . . (b) Disregard the conveyance, and attach or levy execution upon the property conveyed." (Emphasis writer's) The charge requested might have been made as follows: If you find that Prosper and Robert purchased the partnership interest from John in good faith and paid a fair consideration, without knowledge of the defendant's intention to hinder, delay or defraud the creditor at the time of the purchase your verdict must be for the garnishees.

The court did charge as follows: "The issue in the case becomes this: Was this transfer by John K. Oswald of his interest in the partnership composed of the three brothers a fair transaction or was it fraudulent as to present and future creditors?" And further, "The theory of the defendant is that this was a perfectly fair transaction; that it was open and above board for all persons to see; that it was done in a completely legal manner; that a fair consideration was paid to John K. Oswald for his interest in the partnership, and there was nothing fraudulent about it." And again, "If you find that this conveyance or transfer by John K. Oswald of his interest in the partnership, in Oswald's Market, to his brothers was a fair and bona fide transaction, you would then find in favor of the Oswalds who are the garnishees, and you would say, 'We find for the garnishees' ".

We agree with the court below that "when this case is viewed as a whole as we have done, it is seen that great pains were taken to divest John K. Oswald of his property in such a manner as to exhibit much technical perfection but in reality to be done with the intent to defraud the plaintiff".

Judgment affirmed.

———

DISSENTING OPINION BY HOFFMAN, J.:

Whether great pains were taken to divest John K. Oswald of his property with the intent to defraud his creditors is not for us to decide but for a jury. In my opinion, the jury in the instant case was not properly instructed concerning the elements of a fraudulent transfer of property.

The majority correctly points out that a jury might conclude that the transaction was not fraudulent if the purchasers acted without knowledge of the seller's at-

tempt to defraud his creditors. While the intent of the seller is important, *Sheffit v. Koff*, 175 Pa. Superior Ct. 37, 100 A. 2d 393 (1953), "the fraudulent intent which will avoid a conveyance for value must be that of the purchaser." *United States of America ex rel. Marcus v. Morris*, 360 Pa. 298, 303, 62 A. 2d 43, 45 (1948). See also *Jarvis v. Bell*, 296 Pa. 568, 577, 146 A. 153, 156 (1929); *Queen-Favorite Building & Loan Assn. v. Burstein*, 310 Pa. 219, 233, 165 A. 13, 15 (1933).

The trial court, in my opinion, failed to set out these principles clearly and lucidly for the jury's consideration. In its charge, the court concentrated exclusively on the intent of the seller and studiously omitted any reference to the intent, frame of mind or purpose of the purchasers in this transaction.

At the most crucial portion of the charge, when explaining to the jury how to determine whether the transaction was consummated with fraudulent intent, the court stated: "The issue before you is to determine what the *actual intent of John K. Oswald* was at the time he transferred his interest in this partnership, in Oswald's Market, to his two brothers." [The court, at this point, distinguished actual intent from an intent presumed in law.] It then continued: "You are to find out as best you can, from the evidence which the parties are able to produce and have produced to you and under the rules of law as the Court has given them to you, what was the *intent of John K. Oswald* when he transferred his interest in this partnership over to his brothers. Did *he intend* to remove his property from the reach of his present or future creditors? Was that *his actual intent,* or was *his intent* to simply divest himself of his interest in this partnership *for whatever purposes or reasons he may have had of his own? When you have made that determination, you will then be prepared to render your verdict.*" (Emphasis added.).

The majority opinion attempts to demonstrate that the requisite fraudulent intent of the purchasers was explained to the jury. It points to the trial judge's various oblique references to a "bona fide", "fair", or "open and above board" transaction. It also explains that, "The jury might well infer from this record that the seller intended to put his assets in the meat market beyond the reach of this creditor and that his brothers conspired and cooperated with him to accomplish this."[1] Speculation by us relating to what the jury might have inferred from the record is, in my view, irrelevant. I cannot believe that the nebulous terms mentioned above were an adequate substitute for a clear and precise charge by the court on the question of the purchasers' intent.

It is interesting to note that the opinion of the court en banc on the motions for judgment n.o.v. and new trial was prepared by the trial judge. Significantly, this opinion makes no attempt to prove that the charge contained any of the implications which the majority finds in it. In fact, when explaining the relevance of §7 of the Uniform Fraudulent Conveyance Act in the instant case, the court en banc states: "Under these circumstances, the statute makes the actual intent of the party making the conveyance the principal issue to be resolved by the jury." Again, at the end of its opinion, the court en banc declares: ". . . [T]he intent of the debtor is of prime importance in deciding whether or not a conveyance is fraudulent under Section 7 of the statute."

Appellants' counsel objected to the court's charge and requested an additional charge which would take cognizance of the intent of the purchasers. While I

---

[1] The court en banc also falls back on the record by declaring that ". . . the record shows that Prosper Oswald was cognizant of the fatal accident and pending litigation and could not, in any sense of the term, be considered a 'good faith' purchaser."

may agree with the majority opinion that this requested charge might have been more artfully prepared, it clearly drew the court's attention to this most important element.[2] For the trial court to disregard this request and to refuse to make any reference to the purchasers' intent was, in my opinion, a serious error which gravely prejudiced appellants. I would, therefore, grant a new trial.

JACOBS, J., joins in this dissenting opinion.

[2] In this regard, I agree with the majority that: "The niceties of procedure and pleading make fine intelligence games for lawyers but should never be used to deny ultimate justice. This is the reason for our modern approach to rules of civil procedure.".