THOMAS P. WORRALL v. JOHN J. PYLE.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF CHESTER COUNTY.

Argued February 10, 1890—Decided February 24, 1890.

Although parol testimony, offered to re-form a written instrument and excluded, may have been admissible yet if subsequently other testimony is admitted covering about everything contained in the offers refused, the rulings complained of were harmless, and no cause of reversal is shown.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 435 January Term 1889, Sup. Ct.; court below, No. 3 January Term 1889, C. P.

To the number and term in the court below, Thomas P. Worrall brought assumpsit against John J. Pyle, on a written contract for services for arranging an exchange of the defendant's farm for a certain hotel property owned by one Ellis P. Newlin. The agreement was as follows:

"I agree to pay Thomas P. Worrall the sum of $300 if he exchange my farm, clear of incumbrance, in West Goshen township, Chester county, Pa. for the Mansion House hotel property in West Chester, Pa., the latter to be taken subject to a mortgage of $20,000, at five per cent. In witness whereof I have hereunto set my hand and seal this 11th day of May, A. D. 1888.                                    JOHN J. PYLE."

At the trial on March 4, 1889, Ellis P. Newlin, called by the plaintiff, was asked by the defendant on cross-examination:

Q. Was the Mansion House in the hands of Mr. Worrall for sale? A. Not at that time. Q. Was it subsequently?

Plaintiff's counsel objects to the question as not cross-examination and immaterial.

By the court: Objection sustained; exception.[1]

The defendant being called, his counsel made the following offer:

Defendant's counsel state that they propose to show what
VOL. CXXXII—34

took place in the inception of this affair and led up to the consummation; that purposely a part of the agreement that Mr. Worrall told him should be incorporated in it was left out, and that a fraud at that time was perpetrated upon him.

Q. Now I wish you would state what occurred at the time of the execution of this paper, which led up to it, as to the terms of the paper which were not included in it. A. This matter had been pending a long time between Mr. Worrall and I, and I declined about twenty times to entertain it at all, because I thought the trade was—— Q. Give me the last talk. A. He finally came to my store in a great splutter. I was busy, and he says, "I think I am entitled to an agreement with you in this matter." I was very busy, I looked at the paper, he read it himself, and I says, "Mr. Worrall, this is very meagre, very indefinite, it does not cover the terms at all." He says, "You sign it and everything will be right; I will see that everything is right." I says, "The lease of the hotel property is a very important consideration, to know how many years Mr. Newlin will keep it; and my personal property on the farm will go begging for a buyer if the real estate is disposed of, unless we have some understanding about what is to be done with it; and the personal property in the Mansion House should be included in this transfer." He says, "You sign the paper, and I will see that you are taken care of, and your personal property on the farm shall be sold to your satisfaction." I was very busy and hurriedly signed the paper, and he went away; he came again, and I says, "Thomas, it is very funny you asked me to sign this paper."

Plaintiff's counsel objects to the testimony.

Defendant's counsel state that they propose to prove by Mr. Pyle that Mr. Worrall was the agent of Mr. Newlin; that at the time this agreement was sought for by Mr. Worrall he was the agent of Ellis P. Newlin, and that he said so to Mr. Pyle.

Plaintiff's counsel objects to the offer on the ground that no such evidence is set up in the affidavit of defence filed, and secondly, that under the written contract it would make no difference.

By the court: Objection sustained; exception.[2]

Q. Was there ever any agreement upon the part of Mr. Newlin, that was ever communicated to you, to purchase your per-

sonal property upon this farm? A. On that point we could not agree.

Plaintiff's counsel objects to the testimony.

By the court: Objection sustained; exception.[3]

Afterwards defendant's counsel proceeded:

Q. Did you subsequently learn that Mr. Worrall was employed by Mr. Newlin? A. I did, sir, after I signed the paper. Q. Was any agreement ever presented to you for your signature or examination, which included a purchase of your personal property on the farm? A. No, sir; all verbal, nothing written; there never was a written agreement; I never saw any. Q. Everything that ever was done with Mr. Newlin on the subject, was done by Mr. Worrall in your absence? You never had any talk? A. He had all to do with it; he conceived and carried it through. Q. And no sale ever took place? A. No.

On cross-examination:

Q. You said there was no agreement in writing in regard to the personal property? A. There never was any. Q. Do you swear there was no verbal agreement in regard to the personal property? A. I swear that there was a verbal agreement. Q. What was it? A. That the Mansion House personal property went with the real estate; I always understood it so. Q. I was asking you about the personal property on the farm. Was there any agreement about that? A. The verbal agreement was that Mr. Worrall was to see that it was disposed of judiciously. Q. Was there any verbal agreement between you and Mr. Worrall communicating to you what Mr. Newlin was willing to do? A. No, I do not remember of any; I know there was a good many plans discussed, but we never came to any agreement. Q. What did you ask for the personal property on the farm? A. I do not recollect any price being stated. . . . . Q. Was there ever any talk about your selecting a man, Mr. Newlin selecting a man, and they selecting a third one, to assess the valuation, and you agreeing to abide by that valuation? A. No, sir. Q. Was there any talk on that subject at all? A. I wanted the personal property on the farm to be sold at auction. Q. What was to hinder its being sold? A. I do not know; it was not done. Q. Why did not you do it; it was yours, and nobody had any lease on it? A. The

Arguments.

matter had not got that far advanced; there were several other matters, a lease, that we could not agree on; I wanted Mr. Worrall to fix the lease for six years, and he would not give me an assurance for more than three years, and so we never got down to a disposition of the personal property on the farm, or in the Mansion House either, because the lease was more important.   Q. The lease of what?   A. The Mansion House; I was afraid that prohibition would come along after a while and I wanted a long lease. . . . .

On Re-direct:

Q. Can you give me about when you learned that Mr. Worrall was the agent of Mr. Newlin in this same matter?   A. It was a short time after this agreement was signed; I do not know whether it was a week or ten days after the agreement was signed.   Q. How did you learn that?   A. Mr. Worrall told me so, and I found then I had been very badly tripped, and that was one reason why I was dissatisfied; I became disgusted with the whole thing, because he was acting for both parties and told me he expected to get as big a fee from Mr. Newlin as from me.   I says, "Why did you ask me to sign that paper?"   He says, "Because the act of assembly will not allow me to take a fee from both clients without a paper, and I expect to get as big a fee from Mr. Newlin as from you."

The plaintiff being recalled in rebuttal, the following offer was made:

Q. Mr. Pyle has spoken about the personal property on the farm; I wish you would give your version of that.   Objected to.

By the court: The testimony is admitted, upon the ground that Mr. Monaghan objected, but withdrew his objection, to the testimony concerning the sale of the personal property on the farm, and it was testified to by Mr. Pyle.   The objection is overruled; exception.[4]

—The jury returned a verdict for the plaintiff for $313.50, upon which judgment was subsequently entered; whereupon the defendant took this appeal, assigning for error:

1–3. The refusal of defendant's offers.[1 to 3]

4. The admission of plaintiff's offer.[4]

*Mr. John J. Pinkerton*, for the appellant.

Counsel cited: Cullmans v. Lindsay, 114 Pa. 167; Walker

Syllabus.

v. France, 112 Pa. 203; Greenawalt v. Kohne, 85 Pa. 369; Barclay v. Wainwright, 86 Pa. 191; Lippincott v. Whitman, 83 Pa. 244; Phillips v. Meily, 106 Pa. 536; Powelton Coal Co. v. McShain, 75 Pa. 245; Shughart v. Moore, 78 Pa. 472; Bown v. Morange, 108 Pa. 74; Jackson v. Litch, 62 Pa. 455; Thomas v. Loose, 114 Pa. 35.

*Mr. R. Jones Monaghan* (with him *Mr. H. T. Fairlamb* and *Mr. J. Frank E. Hause*), for the appellee.

Counsel cited: Everhart v. Searle, 71 Pa. 260; Rupp v. Sampson, 16 Gray 398; Walker v. Osgood, 98 Mass. 352; Rice v. Wood, 113 Mass. 134; Redfield v. Tegg, 38 N. Y. 212; Rowe v. Steven, 53 N. Y. 621; Shepherd v. Hedden, 29 N. J. L. 334; Herman v. Martineau, 1 Wis. 151 (60 Am. Dec. 368); Orton v. Schofield, 61 Wis. 382; Green v. Robertson, 64 Cal. 75; Mullen v. Keetzleb, 7 Bush (Ky.) 253; Siegel v. Gould, 7 Lans. (N. Y.) 177.

PER CURIAM:

We find no error in this record. If the evidence, the rejection of which is assigned for error, was admissible, which is by no means clear, the defendant below does not appear to have been injured by its rejection, as nearly all that is covered by the exceptions was subsequently admitted, and went to the jury. There is nothing in the case which requires discussion.

Judgment affirmed.