# Muntz, Appellant, v. Cottage Hill Land Company.

*Negligence—Flooding coal mine—Sinking well—Evidence—Case for jury.*

In an action of trespass to recover damages for an alleged wrongful flooding of a coal mine, the case is for the jury, and a verdict and judgment for defendant will be sustained, where the evidence on one side tends to show that the damage was caused by the negligent way in which a water well was drilled by the defendant, while the evidence on the other side tends to show that the injury to the mine was caused by the failure of the plaintiff to leave sufficient pillars to support the roof.

*Evidence—Rebuttal—Cumulative evidence.*

A judgment will not be reversed because the trial judge refused to admit certain evidence in rebuttal, where it appears that the subject to which the evidence related had been gone into very fully in chief, and that the rebuttal testimony would simply have been cumulative.

Argued Oct. 15, 1908. Appeal, No. 120, Oct. T., 1908, by plaintiff, from judgment of C. P. Butler Co., June T., 1908, No. 66, on verdict for defendant in case of Mary K. Muntz v. The Cottage Hill Land Company of Butler, Pa., incorporated. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for injuries to a coal mine. Before GALBREATH, P. J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were to various rulings on evidence and various instructions.

*S. F. Bowser*, with him *A. L. Bowser* and *W. A. McDowell*, for appellant.

*W. D. Brandon*, with him *C. G. Christie*, for appellee.

OPINION BY MR. JUSTICE MESTREZAT, January 4, 1909:

We have carefully examined the twenty-eight assignments

of error filed in this case and we fail to discover any error in any of them. The case was manifestly for the jury and was submitted in a charge exceptionally clear and comprehensive, directing the attention of the jury to every question of fact in it. The claim is for injuries caused by flooding a coal mine.

The plaintiff is the owner of fifty acres of land in Butler county under which is the Upper Freeport vein of coal which she and her husband have been operating for many years. The defendant company owns the adjacent land, and in the early part of 1905 drilled a water well on its premises, a short distance from the plaintiff's line. The plaintiff's claim, as laid in the statement, is based upon the negligence of the defendant company. It is averred that the defendant in drilling the well drilled it too deep, through the Mahoning sand stone into a shale that lies above the slate which serves as a roof immediately over the coal, and that the shale is of a loose nature which permitted the water to pass through it down to the slate and to weaken the strength of the covering so that it fell and caused the plaintiff's mine to be flooded. It also averred that the defendant company knew the subterranean formations in that locality, knew that if it drilled the well in the manner in which it did that injuries would result to the plaintiff's mine, and that after the well had been drilled and the water began to flow from it into the mine, the company made no effort to prevent it.

The defendant denies that it had such knowledge of the subterranean formations that would lead it to believe that drilling its well in the manner it did would result in water flowing into the plaintiff's mine, that the water which accumulated in the well did not flow into the plaintiff's mine, and was not the cause of any injury to her mine and that after the plaintiff filed a bill in equity to compel the defendant to plug or close its well, it did fill the well with concrete to the depth of about seventy feet which would shut off the flow of any water from the well. It is also claimed on the part of the defendant company that if the roof of the mine was broken, it was caused by the failure of the plaintiff in her mining operations to leave sufficient support or pillars, and also that if any

water flowed into the mine through a break in the roof it came from some or all of several wells that had been drilled by other persons in that locality.

These were the questions presented for the consideration of the jury. The court in its charge directed attention to the several questions presented by the pleadings and called the attention of the jury to the evidence bearing upon each question. He instructed the jury, too favorably to the plaintiff, that the defendant company would be chargeable with those things it actually knew or with such knowledge as was reasonably acquirable in regard to the effect of drilling the well, that the company was responsible if they knew or should have known that the water would be lost and injure the plaintiff's mine if the well was drilled below a certain point. The evidence showed the different strata through which the well was drilled and their character, and the court left it to the jury to say whether the defendant should have had such knowledge of the character of the strata as would lead the company to believe that the water might flow from the well into the plaintiff's mine. The judge told the jury that if such was the character of the strata and the fact was of common notoriety or generally known, "the company would be chargeable with it; if not they would not be chargeable, and in the absence of common knowledge of it they would only be charged with negligence in that respect if the knowledge was brought home to them or in some way they were put upon their notice of those things." The defendant claimed and introduced evidence to show that the injury to the plaintiff's mine was caused by the failure in operating the mine to leave sufficient supports or pillars to sustain the roof, and that the roof of the mine fell by reason of the insufficiency of such supports and not by its being weakened by water flowing from its well. After referring to the testimony bearing upon the questions submitted, the court said: "Now, gentlemen, if, after having so considered all the testimony on either side, you conclude that there was no negligence or that the trouble does not come from the defendant company's well, then, in either event, you will find a verdict for the defendant. If you, how-

ever, find that the trouble is due to the negligence of the defendant and that it was due to water coming from their well and due to their negligence alone, without any negligence on the part of the plaintiff in the care that was being taken of the shaft or well on her place, then, gentlemen, it would be your duty in that event, to find for the plaintiff."

The plaintiff is not relying here on her common-law right to lateral support of her premises, and hence that question does not arise in the case. Authorities are cited to sustain such right, and the plaintiff, in her printed brief, says: "Under the authorities in a case like this, there is some doubt as to whether negligence on part of the defendant is a necessary element in fixing liability." But as we have said that question is not in the case. The plaintiff is confined to the cause of action set forth in her statement, which avers that the injury to her mine was caused by the willful and negligent conduct of the defendant company. Hence, she must, to support her claim in this action, show that her injuries were produced by the negligent conduct of the company.

The assignments alleging error in parts of the charge are entirely without merit. The charge, as we have said, was amply sufficient to enable the jury to have a clear and comprehensive view of every question of fact to be determined by them. It was supplemented by the court's answers to the numerous points presented on both sides of the case. The plaintiff, therefore, got the benefit not only of a very clear and full charge but also of adequate instructions in the answers to the several points. The plaintiff in her fifth and eighth points attempted to eliminate the element of negligence and have the jury determine the defendant's liability in the case under the common law governing the rights of adjacent owners. This, as we intimated above, she could not do under the pleadings in the case and the court very properly so ruled.

The assignments alleging error in the court declining to hear certain evidence in rebuttal relative to the character of the pillars or supports in the mine cannot be sustained. The subject had been gone into very fully in chief and the testimony would simply have been cumulative. The plaintiff had called

eight or ten witnesses who had examined the mine and who testified as to the character of the pit, the supports or pillars, and the general condition of the mine. The court, however, did not exclude the entire offer of evidence proposed in rebuttal, but permitted the plaintiff to rebut the evidence of the defendant offered to show the percentage of coal and the size of the pillars necessary to be left to secure the safety of the mine. This gave the plaintiff ample opportunity to meet anything introduced by the defendant company and not anticipated by her in chief.

Some testimony was attempted to be elicited by the plaintiff from witnesses who were manifestly not qualified to speak on the subject. An attempt was also made by the plaintiff to have certain witnesses perform the duty of the jury in drawing conclusions from the evidence in the case. The ruling of the learned court in these instances was correct, and the assignments of error covering them are not sustained.

The judgment is affirmed.