## Hesse *v.* Peckham, Appellant.

Argued March 17, 1960. Before Jones, C. J., Musmanno, Jones, Cohen, Bok and Eagen, JJ.

*Thomas Park Shearer,* with him *Albert D. Brandon,* and *Oliver, Brandon & Shearer,* for appellants.

*Gilbert E. Morcroft,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, April 19, 1960:

In this action of assumpsit for the recovery of the value of turkeys which the plaintiff claimed to have sold and delivered to the defendants and which the defendants denied accepting or receiving, the jury returned a verdict for the plaintiff for the aggregate amount of his claims with interest from various specified dates. The defendants moved for a new trial which the court en banc refused. Judgment on the verdict was duly entered and the defendants have appealed. They complain of two matters allegedly occurring at trial, neither of which merits the description of assignment of error.

The appellants' first complaint is that the trial judge curtailed defendants' cross-examination of the plaintiff with respect to his "day book" which was identified as Defendants' Exhibit "Q". This allegation is patently contrary to the unmistakable record. The second complaint is that the defendants' Exhibit "Q", which had not been formally offered in evidence, was erroneously sent out with the jury along with all the other exhibits in the case. The triviality of this contention will at

once be apparent upon reference to the attending circumstances as disclosed by the record.

The plaintiff, as a witness in his own behalf, testified in direct examination for 19 pages of the printed record. He was then uninterruptedly cross-examined by defendants' counsel for 41 pages and, after a brief hiatus for the testimony of two intervening witnesses, defendants' cross-examination of the plaintiff was resumed for another 15 pages. A considerable part of the cross-examination had to do with the plaintiff's "day book", which at that stage was referred to by defendants' counsel as the book with the "gray cover". In view of what undeniably transpired at the trial, it comes with poor grace from the defendants to assert that their cross-examination of the plaintiff respecting his "day book" was "curtailed" by the court. Actually, the trial judge overindulged defendants' counsel by permitting him to continue to the length he did with a repetitive and confusing cross-examination for the sole alleged purpose of testing the plaintiff's credibility. Just how useless the cross-examination was for the purpose ascribed is best indicated by the jury's verdict which fully accredited the plaintiff's testimony. The opinion for the court en banc justifiably regrets "that the lawyer who tried this case in behalf of defendants did not present the [new trial] motion, nor undertake to make the argument before the court." Had he done so, he could hardly have had the temerity to suggest that he had been restricted in interrogating the plaintiff.

The erroneous idea which appellants have striven to insinuate, namely, that their cross-examination of the plaintiff concerning his "day book" was restricted, rests upon no more than that defendants' counsel (when the plaintiff was called for limited rebuttal) had the "day book" marked as defendants' Exhibit "Q" and

again sought to cross-examine the plaintiff further about the "day book" although it had not been mentioned in the witness' direct examination in rebuttal. After defendants' counsel had proceeded with the obviously objectionable cross-examination for two more pages of the printed record, plaintiff's counsel interposed an objection on the ground that the interrogation was not proper cross-examination in rebuttal. The court expressed agreement that the examination had gone far beyond the scope of rebuttal but, at the continued insistence of defendants' counsel, permitted the witness to answer "one more time" and then terminated the improper cross-examination, saying, "All right, now the objection is sustained and that will be the end of that question." Thus it is, that for a correct ruling upon a proper occasion, the appellants unfairly criticize the trial judge.

The situation is well described in the opinion for the court en banc, as follows: "On cross-examination plaintiff was thoroughly questioned on his day book without limitation or restriction by the trial court. Defendants had the book marked as their Exhibit Q. Now defendants protest that on rebuttal by plaintiff they were not permitted to make unrestricted inquiry into the day book, which opportunity they already had on plaintiff's case in chief. Furthermore, plaintiff's testimony in rebuttal made no mention of the day book. Plaintiff's rebuttal was confined to oral testimony explaining or answering defense matters not contemplated in his case in chief. Nevertheless the trial judge allowed a wide latitude on the rules of evidence and permitted defense counsel to question the plaintiff concerning the day book. When plaintiff's counsel objected that the cross-examination was going far beyond the field of rebuttal the court sustained the objection, which it had every right to do. Defendants have no just reason for complaint: Jarvis v. Bell, 296 Pa. 568."

The appellants' complaint, that Exhibit "Q", which was not formally offered in evidence, was sent out with the jury along with all of the other exhibits in the case, is utterly lacking in merit and little need be said about it. No objection was ever made on this score until the defendants filed their motion for a new trial. As we have already seen, it was defendants' counsel himself who had the day book marked as an exhibit and who cross-examined the plaintiff extensively with respect to items contained therein. The trial judge, *sua sponte*, might well have directed that the exhibit be formally received in evidence, or plaintiff's counsel could have offered it as an aid to the jury in passing upon the cross-examination of the plaintiff by defendants' counsel. Substantially, that is what happened at the conclusion of the court's charge. The printed record before us discloses (pp. 131a-132a) that, at the end of the charge,

"(Juror No. 11 comes before the Court for a conference, off record.)

"(Conference between Court and counsel, off record.)"

Following that, the court instructed the attending tipstaff to take the jury up to the "jury room with all the exhibits . . . ." Plaintiff's counsel inquired, "Is Exhibit Q supposed to go out with the jury? (Addressing Juror No. 11:) Is this what you mean? That is the book that belongs to the plaintiff that was exhibited this morning at [defendants' counsel's] request." To that observation, defendants' counsel added, "I would like to note that cross-examination by me following the marking of that Exhibit was terminated by the Court's order." The court responded, "All right"; and the jury retired taking with them all exhibits, including Exhibit "Q". It is plain enough that defendants' counsel knew that Exhibit "Q" was going out with the jury and made no objection.

What had happened when Juror No. 11 spoke to the trial judge privately at the conclusion of the charge, as above indicated, is well set out in the opinion for the court en banc as follows: "It is regrettable, as has been stated, that the lawyer who tried the case for defendants was not present at these motions, but after testimony was closed and before the case went to the jury one of the jurors made inquiry of the judge concerning the day book. At a sidebar conference it was agreed among counsel that the day book, which was Defendants' Exhibit Q, although not admitted into evidence, could go out with the jury."

The circumstances disclosed by the record leave no doubt in our minds as to the correctness of the trial judge's recollection of what actually occurred in respect of Exhibit "Q" and the jury.

Judgment affirmed.